UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY ELAINE ZARATE,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>　　　　　　　　　　Defendant. | Case No.: 3:18-cv-00223-WQH-JLB<br><br>**REPORT AND RECOMMENDATION REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>**(ECF Nos. 12, 16)** |

This Report and Recommendation is submitted to the Honorable William Q. Hayes, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California.

On January 31, 2018, plaintiff Mary E. Zarate ("Plaintiff") filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability and disability insurance benefits, and supplemental security income ("SSI"). (ECF No. 1.)

Now pending before the Court and ready for decision are the parties' cross-motions for summary judgment. For the reasons set forth herein, the Court recommends that Plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's cross-motion for summary judgment be **DENIED**, and that Judgment be entered reversing the

decision of the Commissioner and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## I. PROCEDURAL BACKGROUND

On June 19, 2014, Plaintiff filed concurrent applications for a period of disability and disability insurance benefits and SSI under Titles II and XVI of the Social Security Act, respectively, alleging disability beginning October 1, 2009. (Certified Administrative Record ("AR") at 225-31, 232-37.) After her applications were denied initially and upon reconsideration (AR 160-64, 169-74), Plaintiff requested an administrative hearing before an administrative law judge ("ALJ"). (AR 175-76.) An administrative hearing was held on September 15, 2016. (AR 64-95.) Plaintiff appeared at the hearing with counsel, and testimony was taken from her, as well as from a vocational expert ("VE"). (AR at 64-95.)

As reflected in his November 7, 2016 hearing decision, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from October 1, 2009 through the date of his decision. (AR 41-63.) The ALJ's decision became the final decision of the Commissioner on December 6, 2017, when the Appeals Council denied Plaintiff's request for review. (AR 1-6.) This timely civil action followed.

## II. SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520 and 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 1, 2009, the alleged onset date. (AR 46.)

At step two, the ALJ found that Plaintiff had the following severe medically determinable impairments: degenerative disc disease of the back; inflammatory arthritis; scoliosis; and obesity. (AR 46.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments. (AR 48.)

///

Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") "to perform light work" with the following limitations: Plaintiff "could occasionally climb stairs, but never ladders, scaffolds, or ropes; [and] she could occasionally balance, stoop, crouch; [but] never kneel or crawl." (AR 48.) In addition, Plaintiff could not "have concentrated exposure to unprotected heights, dangerous or fast moving machinery; and no concentrated exposure to cold temperatures." (AR 48.)

For purposes of his step four determination, the ALJ adduced and accepted the VE's testimony that a hypothetical person with Plaintiff's vocational profile and RFC would be unable to perform her past relevant work as a boatloader. (AR 56.)

The ALJ then proceeded to step five of the sequential evaluation process. Based on the VE's testimony that a hypothetical person with Plaintiff's vocational profile and RFC could perform the requirements of occupations that existed in significant numbers in the national economy (*i.e.*, sub assembler, hand packager, ticket taker), the ALJ found that Plaintiff was not disabled under the law from October 1, 2009 through the date of decision. (AR 57-58.)

### III. PLAINTIFF'S CLAIMS OF ERROR

As reflected in Plaintiff's motion for summary judgment, the disputed issues that Plaintiff is raising as the grounds for reversal and remand are as follows:

1. Whether the ALJ failed to properly consider Plaintiff's borderline age situation when he categorized Plaintiff as "young." (*See* ECF No. 12-1 at 13-15.)

2. Whether the ALJ failed to properly consider the opinions of Dr. Tew, Plaintiff's treating physician, and Dr. Dolnak, a consulting psychiatrist. (*See id.* at 15-20.)

### IV. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of*

*Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). In reaching his findings, the ALJ is entitled to draw inferences which logically flow from the evidence. *Id.*

## V. DISCUSSION

### A. The ALJ Committed Reversible Error by Failing to Consider Plaintiff's Borderline Age Situation

Plaintiff first contends that the ALJ, in determining Plaintiff's age group category, erred by failing to properly consider Plaintiff's fast approaching borderline age when he categorized her as "young." (ECF No. 12-1 at 13-15.)

#### 1. Applicable Law

A claimant makes a prima facie showing of disability where, as here, the claimant has established that she suffers from a severe impairment that prevents her from doing past work. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). At this point—step five— the burden shifts to the Commissioner to prove that "significant numbers" of other work exists in the national economy which an individual with the same RFC, age, education, and work experience as the claimant could perform. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(a)(4)(v) & (g), 404.1560(c); 20 C.F.R. §§ 416.920(a)(4)(v) & (g), 416.960(c); *Heckler v. Campbell*, 461 U.S. 458, 461-62 (1983); *see also Tackett*, 180 F.3d at 1100-01 (describing legal framework for step five). The Commissioner may satisfy this burden either (1) by referring to the Medical-Vocational Guidelines in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly referred to as "the Grids"); or (2) by obtaining testimony from a VE. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1100-01).

The Grids are matrices of the "four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071-72 (9th Cir. 2010) (citing *Heckler*, 461 U.S. at 461-62 (1983)); *see also Lounsburry v. Barnhart*, 468 F.3d 1111, 1114-15 (9th Cir. 2006). For purposes of applying the Grids, there are three age categories: younger person (under age 50), person closely approaching advanced age (age 50-54), and person of advanced age (age 55 or older). *Id.* at 1071 (citing 20 C.F.R. § 404.1563(c)-(e)); *see also* 20 C.F.R. § 416.963(c)-(e). However, these age categories are not applied in a rigid manner. Section 404.1563(b) provides:

> We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will *consider* whether to use the older age category after evaluating the overall impact of all the factors of your case.

*Id.* (citing 20 C.F.R. § 404.1563(b) (emphasis added)); *see also* 20 C.F.R. § 416.963(b) (same). Pursuant to this regulation, "an ALJ is not required to use an older age category, even if the claimant is within a few days or a few months of reaching an older age category," but should consider it. *Id.* (citing *Bowie v. Comm'r*, 539 F.3d 395, 399-401 (6th Cir. 2008) (holding that section 404.1563(b) "does not impose on ALJs a per se procedural requirement to address borderline age categorization in every borderline case")); *see also Burkes v. Colvin*, No. CV 14-07130-DFM, 2015 WL 2375865, at *1 (C.D. Cal. May 18, 2015) ("While the ALJ is required to consider use of an older age category in a borderline situation, the ALJ does not need to explain in a written decision why an older age category was not used.") (citing *Lockwood*, 616 F.3d at 1070, 1072-74).

///
///
///
///

5

3:18-cv-00223-WQH-JLB

2. <u>Analysis</u>

Here, the ALJ did not satisfy the requirement that he consider whether to use the older age category. Although the ALJ cited 20 C.F.R. §§ 404.1563 and 416.963 and determined based on Plaintiff's birthdate that she was 47 years old and a younger individual,[1] he made this calculation based "on the alleged disability onset date" and not based on the date of his decision. (*See* AR 56.) A claimant's age should be considered at the time of the ALJ's decision. *See Lockwood*, 616 F.3d at 1071-72; *see also Russell v. Bowen*, 856 F.2d 81 (9th Cir. 1988) (using the date of the Commissioner's final decision, which was the ALJ's hearing decision, to determine whether a borderline situation was presented in a social security disability case); *Little v. Berryhill*, 690 F. App'x. 915, 917 (9th Cir. 2017) ("A claimant's age should be considered at the time of the ALJ's decision.").

On the date of the ALJ's decision, Plaintiff was 54 years, 11 months, and 13 days, or mere days away from age 55, which would place her in the category of "person of advanced age." *See* AR 56; *see also* 20 C.F.R. §§ 404.1563(e), 416.963(e). If the ALJ had considered Plaintiff a person of advanced age at the time of his decision, taking into consideration her RFC, education, and work experience, the Grids may have directed a finding of disabled. *See* 20 C.F.R. part 404, subpart P, Appendix 2, Rule 202.06;[2] 20 C.F.R.

---

[1] *See Lockwood*, 616 F.3d at 1071-72 (finding the ALJ satisfied the requirement that she consider whether to use the older age category when she mentioned in her decision the claimant's date of birth and found that she was 54 years old and, thus, a person closely approaching advanced age on the date of the ALJ's decision, and cited to 20 C.F.R. § 404.1563, thus indicating the ALJ was clearly aware that the claimant was just shy of her 55th birthday, at which point she would become a person of advanced age).

[2] The Grids may also have directed a finding of not disabled, depending on whether the ALJ determined that Plaintiff's previous job skills were transferrable. *See id.* at Rule 202.07. Here, because the ALJ based his analysis on Plaintiff as a "younger" person, he did not explicitly determine whether Plaintiff's job skills were transferable. (AR 57.)

6

§ 416.969; *see also Lounsburry*, 468 F.3d at 1115-16 ("[W]here application of the grids directs a finding of disability, that finding must be accepted by the Secretary . . . whether the impairment is exertional or results from a combination of exertional and non-exertional limitations." (quoting *Cooper v. Sullivan*, 880 F.2d 1152, 1157 (9th Cir. 1989)).

As the ALJ failed to appropriately calculate Plaintiff's age category on the date of his decision, the Court finds that the ALJ necessarily failed to consider whether to place Plaintiff within the "advanced age" bracket. *See Hardin v. Colvin*, No. EDCV 15-02596-JEM, 2016 WL 6155906, at *4-6 (C.D. Cal. Oct. 21, 2016) (finding the ALJ failed to consider whether to use the next higher age category when the ALJ relied on the alleged onset date rather than the date of decision). This failure constitutes reversible error.[3] *See* 20 C.F.R. § 404.1563(b); *Lockwood*, 616 F.3d at 1071-72 (holding that "an ALJ does not commit reversible error as long as she considers whether to use the older age category"); *Little*, 690 F. App'x at 917 (finding the ALJ erred when she calculated the claimant's age at the time of her application, rather than at the time the ALJ made her decision, and also erred when the ALJ failed to show that she considered placing the claimant in a higher age category).

The Court's finding of reversible error, however, is limited to Plaintiff's application for SSI. As both parties acknowledge, Plaintiff's application for a period of disability and disability insurance benefits can only be claimed through December 31, 2014—the date that Plaintiff's coverage expired. *See* ECF Nos. 12-1 at 15, 16-1 at 4; AR 44; *see also* 20 C.F.R. §§ 404.131, 404.321; Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *8 ("When the person last met the insured status requirement before the date of adjudication, the oldest age to be considered is the person's age at the date last insured."). Plaintiff had just turned 53 when her coverage expired. As such, taking into consideration Plaintiff's

---

[3] The Court finds that Plaintiff's and the Commissioner's arguments concerning HALLEX and POMS and whether the ALJ is required to explain his findings are not implicated here because the ALJ did not even consider the correct borderline age situation.

RFC, education, and work experience, the Grids would direct a finding of not disabled. *See* 20 C.F.R. part 404, subpart P, Appendix 2, Rules 202.14 and 202.15. Thus, any reversible error based on the ALJ's failure to consider Plaintiff's borderline age situation is limited to Plaintiff's application for SSI.

**B.       The ALJ Did Not Err in Rejecting the Opinions of Dr. Dolnak and Dr. Tew**

Plaintiff's second and third claims of error address whether the ALJ, in determining Plaintiff's RFC, failed to properly consider the opinions of Dr. Tew, Plaintiff's treating physician, and Dr. Dolnak, a consulting psychiatrist. (ECF No 12-1 at 15-18.)

1. Applicable Law

Medical opinions are among the evidence that the ALJ considers when assessing a claimant's RFC. *See* 20 C.F.R. § 416.927(b). Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the claimant, (2) those who examined but did not treat the claimant, and (3) those who did neither. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion is generally entitled to more weight than an examining physician's opinions, and an examining physician's opinion is generally entitled to more weight than a nonexamining physician's opinion. *Id.*

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("[The] reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion.").

Additionally, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Lester*, 81 F.3d at 831 (emphasis in original). Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they

8

are supported by other evidence in the record and are consistent with it. *Andrews v. Shalala,* 53 F.3d 1035, 1041 (9th Cir. 1995).

"The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)). "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

2. <u>Analysis</u>

a. *Dr. Dolnak*

Plaintiff contends that the ALJ improperly rejected Dr. Dolnak's opinions in determining Plaintiff's RFC. (ECF No. 12-1 at 15.) Plaintiff saw Dr. Dolnak for a comprehensive psychiatric evaluation on August 8, 2014. (*See* AR 54, 498-504.) After administering a series of tests on Plaintiff, Dr. Dolnak diagnosed Plaintiff with "major depressive disorder, recurrent, current episode moderate severity" and gave her a GAF score of 55. (AR 502.)

Dr. Dolnak also issued a "Functional Assessment" based on his examination. (AR at 503.) Dr. Dolnak opined that Plaintiff would be able to "understand, remember, and carry out <u>simple</u> one or two-step job instructions." (AR 503.) He further opined that Plaintiff would have moderate difficulty with the following: (1) detailed and complex instructions secondary to moderate difficulty with attention and concentration related to depression and anxiety; (2) being able to relate and interact with co-workers and the public related to social withdrawal, fatigue, and depressed mood; (3) maintaining concentration, attention, persistence, and pace related to periods of distractibility, fatigue, social withdrawal, and poor attention associated with depression and anxiety; and (4) being able to perform work activities without special or additional supervision regarding depression, fatigue, social withdrawal, and poor attention and concentration with her depression. (AR

9

503.) In addition, Dr. Dolnak opined that Plaintiff would have mild difficulty being able to associate with day-to-day work activity, including attendance and safety, and to accept instructions from supervisors. (AR 503.) Lastly, Dr. Dolnak opined that Plaintiff could not "maintain regular attendance in the workplace or complete the normal work day routine without interruptions from her psychiatric disorder at this time of Major Depressive Disorder, recurrent." (AR 503.)

The ALJ gave Dr. Dolnak's opinion "little weight" for the following reasons:

> This opinion is given little weight as there is little evidence in the record that supports a finding of severe restrictions. The claimant has not alleged any difficulty in social functioning, and her mental health treatment has been minimal. At the hearing she denied having any further mental health treatment and did not allege any further symptoms of affective disorder (Test.).

(AR 54.)

Because Dr. Dolnak's opinion was contradicted by state agency consultants Dr. Hurwitz (AR 105-06, 120-21) and Dr. Caruso-Radin (AR 137-39, 152-54), who opined that Plaintiff's mental impairment was non-severe and "posed no functional limitations," the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Dolnak's opinion. *Bayliss*, 427 F.3d at 1216. The Court will address each of these reasons in turn.

### i. Minimal Health Treatment

The first reason proffered by the ALJ for giving little weight to the opinion of Dr. Dolnak was that Plaintiff's mental health treatment had been minimal. (*See* AR 54.) In according great weight to the opinions of the state agency consultants, the ALJ noted that the record was "scant as to mental health treatment aside from a prescription of Bupropion," and added that "the claimant did not allege any further mental health treatment at the hearing." (AR 55.)

///
///
///

An ALJ may discredit physicians' opinions that are unsupported by the record as a whole. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Louie B. v. Comm'r of Soc. Sec.*, No. 2:17-CV-00267-MKD, 2018 WL 4387625, at *7 (E.D. Wash. Sept. 14, 2018) (finding that the ALJ's rejection of an examining physician's opinion based on plaintiff's minimal mental health treatment was a specific and legitimate reason for rejecting her opinion).

Here, as noted by the ALJ, Plaintiff informed Dr. Dolnak that she was on Bupropion 100mg for her depression, and reported mild improvement of her depressive symptoms with current treatment. (*See* AR 54, 499-500.) Plaintiff also informed Dr. Dolnak that she was currently seeing a primary physician at the American Indian Medical Clinic in the San Diego area. (*See* AR 499.) However, other than medication, there was no indication that Plaintiff was receiving any specific mental health treatment at that time.[4]

The record also reflects that Plaintiff's Bupropion prescription dosage was increased to 300mg on January 5, 2015, and that she was still taking 300 mg once a day for depression in August 2016. (AR 317, 592.) However, at the hearing before the ALJ just a month later, Plaintiff testified that she was not seeing a psychiatrist or psychologist at that time, and the last time she had seen one was approximately three years earlier. (AR 83.) The record indicates no additional treatment for depression on a regular basis. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (finding that a physician's prescription of a conservative course of treatment may constitute substantial evidence to reject a treating physician's opinion).

---

[4] The Court notes that Plaintiff also informed Dr. Dolnak that she had experienced episodes of depression beginning in her late teenage years. (AR 499.) Plaintiff's current episode of depression started approximately a year prior. (*Id.*) Plaintiff also noted that she had one psychiatric hospitalization several years prior with suicidal thoughts, and another episode of depression in 2011 that was treated with Fluoxetine. (*Id.*) Plaintiff reported moderate improvement with that treatment. (*Id.*)

11

Plaintiff relies on *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) for the proposition that "[w]hether a claimant receives the mental health treatment, or exercises poor judgment to not received [sic] mental health treatment, is not a basis for rejecting the presence of a mental impairment diagnosed by the consultative psychiatrist." (*See* ECF No. 12-1 at 17-18.) However, *Nguyen* advises that it is a "questionable practice to chastise one with a mental impairment [*e.g.*, depression] for the exercise of poor judgment in seeking rehabilitation." *Nguyen*, 100 F.3d at 1465 (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)). Here, there is no suggestion here that Plaintiff failed to seek needed treatment; simply that her prescribed treatment was minimal.

Based on the foregoing, the Court finds that the ALJ's first proffered reason was a specific and legitimate reason supported by substantial evidence in the record to reject Dr. Dolnak's opinion.

ii.  No Allegations of Difficulty in Social Functioning

The second reason proffered by the ALJ for giving little weight to the opinion of Dr. Dolnak was that Plaintiff had not alleged any difficulty in social functioning.[5] (*See* AR 54.) Inconsistency between a physician's opinion and the claimant's daily activities suffices as a specific and legitimate reason for discounting a physician's opinion if supported by substantial evidence from the record as a whole. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600-02 (9th Cir. 1999).

In his decision, the ALJ noted that Plaintiff reported to Dr. Dolnak being able to do "Activities of Daily Living" and being able to do chores, such as go to the grocery store, see her doctors independently, and drive short distances in the area. (AR 54.) He further noted that she reported to Dr. Dolnak some "social withdrawal." (AR 47.) However, he

---

[5]  The ALJ also stated in his decision that Plaintiff "experiences mild restrictions in . . . social functioning." (AR 47.) Thus, the Court construes this proffered reason to mean that Plaintiff has not alleged more than mild difficulty in social functioning.

added that her mental status examination was unremarkable, and her memory and cognition were intact. (AR 47.)

During her psychiatric evaluation, the Court notes that Plaintiff specifically informed Dr. Dolnak that she had "some social withdrawal" and "stays home a lot." (AR 499-01.) She further informed him that she used to enjoy working, exercising, cooking, socializing more with family and friends, but that she had not been doing those activities in the prior year because of depression, anxiety, fatigue, and chronic pain. (AR 499.) However, despite these representations, Dr. Dolnak noted in his assessment that Plaintiff had arrived at the appointment with a friend. (AR 500.) He further noted that Plaintiff was "[p]leasant, cooperative, [and] not agitated," and denied having "panic attacks." (AR 501.) Other than a depressed mood and "[m]ild anxiety," Dr. Dolnak did not indicate any other difficulty in social functioning. (*See* AR 501.)

During the hearing, the ALJ asked Plaintiff about her social life. (AR 83.) Plaintiff responded that she does not have any friends with whom she does things, such as go to the movies or out for a meal. (AR at 83–84.) However, Plaintiff also reported living with and taking care of family and occasionally spending a couple of hours at the casino. (*See* AR 80-86.)

Based on the foregoing, the Court finds that the ALJ reasonably determined that Dr. Dolnak's opinion that Plaintiff would have moderate difficulty in maintaining attention and concentration and working with co-workers and the public, and would not be able to maintain regular attendance, was inconsistent with Plaintiff's reported social functioning. Moreover, although Dr. Dolnak noted Plaintiff's reported social withdranwal and anxiety, he does not explain how these symptoms precluded work activity in Plaintiff's case. *See Morgan*, 169 F.3d at 601. Thus, the Court finds that substantial evidence supports the ALJ's determination that Dr. Dolnak's evaluation does not show how Plaintiff's symptoms translated into specific functional deficits which precluded work activity.

For the foregoing reasons, the Court finds that the ALJ's second proffered reason was a specific and legitimate reason supported by substantial evidence in the record.

13

Accordingly, the Court further finds that the ALJ did not improperly reject the opinion of Dr. Dolnak.

          b.    *Dr. Tew*

Plaintiff contends that the ALJ improperly rejected the opinion of Dr. Tew, a treating physician, in determining her RFC. (ECF No. 12-1 at 15-17.) Dr. Tew began treating Plaintiff in approximately 2009 on an "as needed" basis. (AR 554.) As of July 2016, Dr. Tew had seen Plaintiff approximately twenty times. (*See* AR 554, 662.) Dr. Tew completed two physical residual functional capacity questionnaires for Plaintiff, one in September 2014 and another in July 2016. (AR at 554-57, 662-65.) In her motion for summary judgment, Plaintiff only addresses the September 2014 questionnaire. (*See* ECF No. 12-1 at 15-17.)

In the September 2014 questionnaire, Dr. Tew diagnosed Plaintiff with chronic back pain and lupus erythematosus, and opined that Plaintiff had the following limitations: (1) Plaintiff's pain or other symptoms were severe enough to "constantly" interfere with the attention and concentration needed to perform even simple work tasks; (2) Plaintiff could walk only half a city block without rest or severe pain; (3) Plaintiff could only sit for 15 minutes and stand for 10 minutes at one time; (4) Plaintiff could sit and stand/walk less than 2 hours in an 8-hour work day; (5) Plaintiff usually required a cane or other assistive device to walk or stand; (6) Plaintiff could never lift or carry 20 pounds or more, and never stoop/bend or climb ladders; (7) Plaintiff could rarely lift 10 pounds or twist; (8) Plaintiff could occasionally lift less than 10 pounds and crouch/squat or climb stairs; (9) Plaintiff had significant limitations in reaching due to back pain and some limitation in grasping, turning, or twisting objects and fine finger manipulations; and (10) Plaintiff was likely to be absent from work more than four days per month. (AR 554-57.)[6]

---

[6] The Court notes that Dr. Tew's July 2016 questionnaire demonstrated slight improvement in Plaintiff's ability to maintain attention and concentration despite her pain, and an ability to sit, stand, and walk for longer periods of time. (*See* AR 662-65.)

Dr. Tew was Plaintiff's treating physician, so his opinion is normally given controlling weight. The law is well established in this Circuit that a treating physician's opinion is entitled to special weight because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. *See McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes*, 881 F.2d at 751. The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When a treating provider's opinion is not entitled to "controlling weight" because of substantial contradictory evidence, that opinion is still "entitled to deference" based on factors such as the length and nature of the treatment relationship. *Orn*, 495 F.3d at 632–33; *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c).

The ALJ gave Dr. Tew's opinion "little weight" and relied on a hypothetical that did not include Dr. Tew's restrictions. (*See* AR 55, 92.) In giving Dr. Tew's opinion "little weight," the ALJ stated: "This opinion is given little weight as the severe restrictions are not supported by the objective medical record. The claimant is able to perform Activities of Daily Living, and most recently, reported she sometimes went to casinos to 'forget discomfort.'" (AR 55.)

Because Dr. Tew's opinion was contradicted by several doctors – medical consultant Dr. K. Vu (AR 337-43 (January 2011)), evaluating physician Dr. Close (AR 344-49 (September 2011)), state agency consultants Dr. Bitonte (AR 108-10, 123-25 (August 2014)) and Dr. Rehrig (AR 140-42, 155-57 (January 2015)), and evaluating physician Dr. Easley (AR 489-94 (July 2014)) – the ALJ was required to provide specific and legitimate

---

However, Plaintiff's ability to move her head, grasp, turn, and twist objects, and ability to use fine finger manipulations decreased. (*See id.*)

15

reasons for rejecting Dr. Tew's opinion. *Bayliss*, 427 F.3d at 1216. The Court will address each of these reasons below.

### i. Not Supported By Objective Medical Record

One of the ALJ's proffered reasons for rejecting Dr. Tew's opinions was that "the severe restrictions are not supported by the objective medical record." (AR 55.) An ALJ may discredit physicians' opinions that are unsupported by the record as a whole. *Batson*, 359 F.3d at 1195.

Here, the ALJ sets out a detailed and thorough summary of the facts and conflicting clinical evidence in his decision. *See Magallanes*, 881 F.2d at 751. Specifically, the ALJ's decision lays out the inconsistencies between Dr. Tew's opinions and the opinions of other examining physicians. (*See* AR 53-55.) On September 6, 2011, Plaintiff saw Dr. Close, a Diplomate on the American Board of Orthopaedic Surgery, for a consultative orthopedic evaluation. (*See* AR 53, 346-49.) Dr. Close opined that Plaintiff's limitations were far less severe than those determined by Dr. Tew. (*See id.*) On July 29, 2014, Plaintiff saw Dr. Easley, also a Diplomate on the American Board of Orthopaedic Surgery, for another orthopedic consultation. (*See* AR 53, 489-94.) Dr. Easley similarly opined that Plaintiff's limitations were far less severe than those determined by Dr. Tew. (*See id.*) The ALJ gave Dr. Easley's opinion "significant weight," noting that it was consistent with the medical record, Plaintiff's allegations, and the findings of other consulting doctors such as Dr. Vu, Dr. Bitonte, and Dr. Rehrig. (AR 54.)

Given the foregoing, the Court finds that this was a specific and legitimate reason supported by substantial evidence in the record. *See Magallanes*, 881 F.2d at 753 ("To the extent that other physicians' conflicting opinions rested on independent, objective findings, those opinions could constitute substantial evidence."); *Andrews,* 53 F.3d at 1041; *see also Batson,* 359 F.3d at 1195 ("When presented with conflicting medical opinions, the ALJ must determine credibility and resolve the conflict."); 20 C.F.R. § 404.1527(c)(2)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues

16

3:18-cv-00223-WQH-JLB

related to his or her area of specialty than to the medical opinion of a source who is not a specialist.").

ii. Activities of Daily Living

The other reason proffered by the ALJ for giving little weight to the opinion of Dr. Tew was that Plaintiff was able to perform "Activities of Daily Living," and more recently, reported that she sometimes went to the casinos to "forget discomfort." (*See* AR 55.) Inconsistency between a physician's opinion and the claimant's daily activities suffices as a specific and legitimate reason for discounting a physician's opinion if supported by substantial evidence from the record as a whole. *See Morgan*, 169 F.3d at 600-02; *see also Rollins*, 261 F.3d at 856 (finding the ALJ's statement that the treating physician's restrictions were "inconsistent with the level of activity [the claimant] engaged in by maintaining a household and raising two young children, with no significant assistance from her ex-husband" to be a specific and legitimate reason for determining the treating physician's opinion was not controlling).

However, "[a] claimant need not be completely incapacitated to receive benefits. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citing *Smolen v. Chater*, 80 F.3d 1273, 1284 n. 7 (9th Cir. 1996)). The question is whether the claimant's daily activities are in tension with the opinions of her treating providers. *Id.* (finding that a holistic review of the record does not reveal an inconsistency between the treating providers' opinions and the claimant's daily activities, because although the claimant "performed some basic chores and occasionally socialized, the record also reveals that he relied heavily on his caretaker, struggled with social interactions, and limited himself to low-stress environments").

In a disability questionnaire dated December 23, 2010, Plaintiff reported that she lives with her family. (AR 245.) She occasionally babysits her grandchildren for short periods of time, and can occasionally prepare food and complete simple tasks, but when doing so she experiences pain, fatigue, and anxiety. (AR 245-47.) Plaintiff added that she no longer goes shopping or to the grocery store because of pain and anxiety, but she can

17

lift a baby or a bag of groceries. (AR 245-46.) Plaintiff reported being able to drive short distances. (AR 246.) She also reported doing a little yard work, such as sweeping the walkway. (AR 246.)

On August 8, 2014, Plaintiff reported to Dr. Dolnak that she could bathe and dress herself. (AR 500.) She also reported that she could make a small meal for herself and wash a few dishes and clothes, but did not lift heavy loads of laundry or any heavy garbage bags. (AR 500-01.) Plaintiff reported going to the store "with whomever twice a month" and going to the doctor when she needs to see one. (AR 501.) Plaintiff also reported driving short distances, but stated that she does not have any hobbies or regular activities. (AR 501.)

At the administrative hearing on September 15, 2016, Plaintiff reported driving to the hearing. (AR 80.) She also reported that she lives with her daughter and her daughter's twin 10-year old daughters. (AR 80-81.) She stated that she cooks simple meals and does her own laundry, but her daughter does the grocery shopping. (AR 81-82.) Plaintiff further stated that she does not have any difficulty bathing or showering, but occasionally has problems dressing (*e.g.*, putting on shoes). (AR 83.) When asked, Plaintiff stated that she still goes to a casino if someone else drives. (AR 85.) Plaintiff added that she typically spends an hour or two at the casino, but had not been to one for about six months. (AR 85-86.)

The Court finds that a holistic review of the record indicates that Plaintiff's reported daily activities are in tension with the opinions of Dr. Tew. As the ALJ noted, Plaintiff is able to perform activities of daily living independently, including personal care and grooming, chores, preparing simple meals, and driving short distances. (*See* AR 47.) These activities, as well as Plaintiff's reported ability to occasionally spend an hour or two at the casino, are at odds with Dr. Tew's opinions that Plaintiff has significant limitations with reaching, handling, and fine finger manipulations, and cannot sit *or* stand/walk for more than two hours in an 8-hour workday. (*See* AR 555-57.) In this regard, the Court

notes that Plaintiff's testimony does not suggest that she needs to lie down the majority of the day, which is indicated by Dr. Tew's severe limitations.

As such, the Court finds that this was also a specific and legitimate reason supported by substantial evidence in the record. Thus, the ALJ did not improperly reject the opinion of Dr. Tew.

## VI. CONCLUSION AND RECOMMENDATION

For the reasons discussed above, the Court **RECOMMENDS** that Plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's cross-motion for summary judgment be **DENIED**, and that judgment be entered reversing the Commissioner's decision and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS HEREBY ORDERED** that any written objections to this Report and Recommendation shall be filed with the Court and served on all parties **no later than February 11, 2019**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties **no later than February 18, 2019**.

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Turner v. Duncan*, 158 F.3d 449, 445 (9th Cir 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir 1991).

**IT IS SO ORDERED.**

Dated: January 28, 2019

*[signature: Jill Burkhardt]*

Hon. Jill L. Burkhardt
United States Magistrate Judge